Filed 10/15/14  In re J.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J. S. , a Person Coming Under the Juvenile Court Law. | C075322 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD225004) |

James S., father of the minor, appeals from orders of the juvenile court granting the guardians' petition for modification and decreasing his visitation.  (Welf. & Inst. Code[1], §§ 388, 395.)  Father contends the petition failed to state a prima facie case and

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

1

the court abused its discretion in modifying visitation because there was no evidence of changed circumstances, only of an error in judgment on his part, and the modification was not in the minor's best interests. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The special needs minor was adjudged a dependent child in December 2006. His parents failed to reunify with him after 18 months of services and he was placed in long-term foster care in May 2008. Over the next four years, father had weekly visits with the minor. Visits were sometimes unsupervised but more than once father displayed poor judgment with respect to the minor's well-being and supervision was reinstated. From late 2010 through 2011, father was having problems and increasingly missed visits. When the visits were missed, the minor reacted poorly.

In late 2011, the minor was placed with the family of a teacher in his school with a goal of guardianship. At a review hearing in May 2012, the court found guardianship was appropriate and set a section 366.26 hearing.

The report for the hearing reiterated the minor's issues and special needs including speech delays and low functioning. The report said the minor had weekly supervised visits with father and looked forward to the visits but was frustrated and agitated after the contact. The report concluded that guardianship was in the minor's best interests and recommended that visitation be reduced from weekly to monthly. At the hearing in August 2012, the court selected a permanent plan of guardianship and letters of guardianship issued naming the current caretakers as guardians of the minor and denying visits with mother. A copy of the orders was sent to father.

The guardians filed a petition for modification in August 2013, seeking to terminate father's visitation and alleging, as changed circumstances, that father allowed contact between the minor and mother by telephone during visits and told the minor not to tell. The minor later disclosed the contact to the guardians. The petition further alleged that father told the minor he and mother were reuniting and would get the minor

2

back soon. The minor said that mother told him they would sneak him out of the guardians' home and take him to her home. The petition alleged that the parents' statements were very difficult for the minor who was anxious, displayed mood swings, and required increased medication for his symptoms. The minor's therapist stated that visits were detrimental to the minor. The court suspended father's visits pending a hearing on the petition.

The social worker spoke to the minor's therapist and confirmed that father's visits were triggering trauma-related anxieties. The social worker said that, due to the minor's inability to process and understand, he was strongly impacted by discussions of reunifying. The minor's behavior had regressed due to the increased anxiety resulting from father's recent visits. At a home visit, the social worker observed that any discussion of court or father upset the minor who began to rock, wave his hands, and repeatedly say that he wanted to remain in his current home with the guardians. The guardians believed that no contact with father would be in the minor's best interests and promote a stress-free and stable environment for him. The social worker recommended limited suspension of visits to allow the minor to stabilize then reassess a decrease in supervised visits with father paying the cost of supervision.

At the contested hearing, the guardian, A. P., testified the minor had monthly visits with father. Father had visited regularly since the guardianship began although he was not consistent before that and the minor acted out if visits were missed. The last visit in July 2013, was so upsetting to the minor that his therapist recommended the minor discontinue visits with father. During the last visit, the guardians were somewhat separated from father and the minor. Father asked them if the minor could speak to his brother on the telephone. Father had made the request several times before and they agreed. However, during the conversation, the minor looked like there was something not right and A. P. asked father who the minor was speaking to. Both father and the minor said it was his brother, but A. P. was not comfortable with the call and the call

3

ended. When the guardians and the minor left the visit, the minor became upset, started crying and told them he had talked to mother who told him she would come and sneak him to her house. The minor was angry that father had told him not to tell that he was talking to mother. The minor said when he talked on the telephone at visits he was always talking to mother and that she wanted him to come and stay with her. Father told him they would get to stay together real soon. The minor was very agitated and kept apologizing for lying. After the visit he wanted his window closed and locked and was worried that he was in trouble. The minor was also worried about having to leave the guardians' home which led to head banging and other escalated behaviors. Some deterioration in the minor's behavior began about month before the July visit. After visits were suspended, the minor's behavior returned to normal. A. P. testified that she would like no more visits but if visits were ordered there should be very few and supervised by a third-party monitor who would protect the minor. A. P. said that minor takes spoken words literally and can be misled by a casual comment. Until the July visit, the minor enjoyed visits.

Father testified he told the minor not to tell that he had spoken to mother because he thought the guardians would get angry. He did not think he was putting the minor in danger and was unaware mother was to have no contact with the minor. He thought that speaking to the minor might help mother get clean. Talking to mother did not seem to scare the minor at the time or he would not have put her on the telephone. Father said he would not put mother on the telephone again and he now realized that he could not "save everyone."

The court found the guardians had met their burden to show changed circumstances by evidence of the minor's behavior after the July 2013 visits. The court further found father was not aware of the no contact order although it did appear in the guardianship order. The court observed that father's inability to understand what was good for the minor rather than what might benefit the mother made father's behavior

4

detrimental to the minor. The court modified visitation by decreasing the frequency of visits to a minimum of twice a year, to be increased on the recommendation of the minor's therapist. Visits were to be supervised by a third-party supervisor paid for by father.

## DISCUSSION

Father contends the court erred in holding a hearing on the petition for modification because the petition failed to state a prima facie case for modification.

At no time prior to, or at, the hearing on the petition for modification did father ever challenge the sufficiency of the petition. He has forfeited consideration of the issue on appeal by failing to raise it in the juvenile court. (*In re Christopher B*. (1996) 43 Cal.App.4th 551, 558; *In re Dakota S*. (2000) 85 Cal.App.4th 494, 501-502.)

Father further contends the juvenile court abused its discretion in granting the petition for modification because the minor loved his father and enjoyed visits with him.

When the court selects guardianship as the permanent plan for a minor, the court must also make an order for visitation unless the court finds that visitation would be detrimental to the minor. (§ 366.26, subd. (c)(4)(C).) The visitation order is subject to modification pursuant to the circumstances set forth in section 388. (§ 388, subd. (a)(1).) That is, a person having an interest in the child may bring a petition to modify the guardianship visitation order based on a showing of changed circumstances or new evidence and must show that the proposed change in order promotes the best interests of the minor. (§ 388, subds. (a)(1), (d).)

The evidence is clear that father's actions in permitting the minor to speak with mother and encouraging the minor to lie to the guardians constituted a change in circumstances of the visits and led to a major change in the minor's behavior and ability to cope with the stresses of normal life. The minor had significant special needs which the father, to further his own purposes and to attempt to meet the needs of the mother, completely ignored. The father had a history of lapses in judgment which led to

5

restrictions on visitation.  His testimony shows that he was aware that his behavior in facilitating secret contact between mother and the minor was not likely to meet with approval.  His subsequent minimization of the impact of his conduct demonstrates that reinstituting visitation with the minor must occur in a carefully controlled setting to protect the minor from further distress and regression of behavior.  Reducing visits to a minimum of twice yearly with third-party supervision and a provision for increasing the frequency of visits is a reasonable solution to the issues before the court.  No abuse of discretion appears.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                              _____ROBIE_____, Acting P. J.



We concur:



_____MURRAY_____, J.



_____DUARTE_____, J.

6